UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| STEVEN MASSIE, | ) | Case No: 18-cv-4168 |
|  | ) |  |
| Intervenor-Plaintiff, | ) | Judge Sharon Johnson Coleman |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| IDEC CORPORATION, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**ORDER**

IDEC Corporation's motion to compel arbitration is granted in part and denied in part. The motion is denied as to the United States Equal Employment Opportunity Commission ("EEOC's") claim alleging a violation of the Americans with Disabilities Act ("ADA"), and granted as to Steven Massie's Age Discrimination in Employment Act ("ADEA") claim. Accordingly, the ADA and ADEA claims are severed, and IDEC's motion to stay litigation is denied.

**Statement**

EEOC brought this action against IDEC Corporation alleging violations of the ADA. The EEOC seeks injunctive relief to prevent unlawful discrimination from reoccurring as well as individual relief for Intervenor-Plaintiff, Massie. Massie alleges that IDEC Corporation unlawfully terminated him due to his disability and age. After the EEOC brought this action, Massie filed a Motion for Leave to File an Intervenor Complaint [7], pursuant to 42 U.S.C § 2000e-5(f)(1) and Federal Rules of Civil Procedure 24(a)(1)-(b)(1)(B). His motion asserted the same ADA claim as the EEOC's, and added alleged violations of the ADEA against IDEC. IDEC claims that Massie signed an agreement to arbitrate any and all disputes relating to his employment, and that Massie's claims as

1

an Intervenor against IDEC fall squarely into that agreement. IDEC asks this Court to compel

Massie to arbitrate his claims pursuant to Federal Rule of Civil Procedure 12(b)(3) and the Federal

Arbitration Act, 9 U.S.C. § 3 and to stay the EEOC's litigation. The EEOC and Massie oppose

arbitration.

To prevail on a motion to compel arbitration, a party must show that: (1) there is a valid,

written agreement to arbitrate; (2) the dispute is within the scope of the agreement; and (3) there is a

refusal to arbitrate. *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015)

(Kendall, J.) (citing *Zurich Am. Ins. Co. v. Watts Indus. Inc.,* 417 F.3d 682, 687 (7th Cir. 2005)). The

elements are analyzed similarly to the standard of review for summary judgement motions. *See*

*Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1001 (N.D. Ill. 2013) (Castillo, J.) ("[T]he party opposing

compelled arbitration will fail if there is no genuine issue as to any material fact and the moving

party is entitled to a judgment as a matter of law"). When evaluating the scope of an arbitration

clause, arbitration must be compelled "unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Bhd. of*

*Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014)

(internal citation omitted). If a court decides that an issue should be referred to arbitration, the court

must stay the case until arbitration has occurred. 9 U.S.C. § 3.

As an initial matter, IDEC has demonstrated that a valid, enforceable arbitration agreement

exists between Massie and IDEC. Massie does not dispute that he signed an offer letter and an

acknowledgement form confirming his receipt of IDEC's Dispute Resolution Policy ("Policy") upon

beginning his employment. Under Illinois contract law, Massie's signatures and continued

employment at IDEC is sufficient consideration to enforce this agreement. *See Melena v. Anheuser-*

*Busch Inc.*, 219 Ill.2d 135, 152, 847 N.E.2d 99, 109, 301 Ill.Dec. 440, 450 (2006). Failure to read the

Policy before signing does not make the arbitration agreement unenforceable. *See Treiber & Straub,*

2

*Inc. v. U.P.S., Inc.*, 474 F.3d 379, 385 (7th Cir. 2007) ("one cannot accept a contract and renege based on one's own failure to read it"). Additionally, the language of the Policy is broad and far-reaching, covering "any dispute arising out of or related to Employee's employment." Dkt. 22-1. At first glance, both the ADA and ADEA claims fall within the scope of the agreement.

Massie argues that that even if the Policy is a valid agreement, IDEC did not demand arbitration under the statute of limitations listed in the Policy. Specifically, Massie asserts that IDEC failed to demand arbitration within 300 days of his termination, the applicable statute of limitations under the ADA and ADEA. His argument is unavailing. Procedural questions, such as whether a grievance is brought within the time period permitted by an agreement to arbitrate, are resolved by arbitrators. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002). In deciding a motion to compel arbitration, the Court only has the responsibility to determine whether the grievance belongs in arbitration. *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 581(7th Cir. 2006) (citing *AT&T Tech., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). Since the timing of IDEC's request for arbitration is a procedural issue that has no bearing on whether Massie's complaint should be referred to arbitration, the Court need not consider this claim.

Next, the Court considers whether the EEOC's enforcement actions can be limited pursuant to private arbitration agreements. IDEC claims that Massie's choice to intervene should compel the EEOC to stay their litigation against IDEC until all of Massie's claims are resolved through arbitration. Specifically, they rely on the strong public policy favoring arbitration agreements and the Federal Arbitration Act ("FAA"). While the FAA directs courts to give deference to arbitration agreements, it does not require nonparties to arbitrate or otherwise relinquish their statutory authority when they have not agreed to do so. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002).

In this case, the EEOC is a nonparty because they did not sign the arbitration agreement between Massie and IDEC. Instead, they initiated this independent action pursuant to their statutory authority, representing the public's interest. The EEOC's pursuit of victim-specific relief on behalf of Massie does not subject them to the existing arbitration agreement. *See id.* at 291-292, 122 S.Ct. at 763 ("it is the public agency's province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief. And if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum"). Put differently, the EEOC is "not bound by" arbitration agreements an employee signs because its enforcement authority is independent of the legal rights of that employee. *See E.E.O.C. v. Sidley Austin LLP*, 437 F.3d 695 (7th Cir. 2006); *see also In re Bemis Co. Inc.,* 279 F.3d 419, 422 (7th Cir. 2002).

Similarly, Massie's choice to intervene in the EEOC's enforcement action does not require him to resolve his ADA claim in arbitration. In fact, *Waffle House* clearly states that once the EEOC files suit against an employer, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit. § 2000e–5(f)(1); *Waffle House,* 534 U.S. at 291, 122 S.Ct. at 763. In the present case, the EEOC did not issue a "right to sue" letter, nor did Massie independently pursue an ADA claim. Massie did not seek to arbitrate his claim, enter settlement negotiations, or engage in any activities that might have the effect of limiting the EEOC's relief. *See Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 728 (E.D. La. 2015) (compelling arbitration where plaintiff received "right to sue" letter and sought to litigate his claims prior to the EEOC's enforcement action). Apparently, Massie's complaint against IDEC merited enough of the public interest to warrant EEOC representation. While Massie is exercising his statutory right to intervene, he has no bearing on the EEOC's claim. Still, denying employers the ability to compel their employees to arbitrate disputes once the EEOC files suit would have a negligible effect on the

federal policy favoring arbitration. *See Waffle House*, 534 U.S. at 290, n.7, 122 S.Ct. at 762, n.7. In 2014, the EEOC filed just 133 cases against employers. Equal Employment Opportunity Commission, The EEOC, Conciliation, and Litigation, https://www.eeoc.gov/eeoc/newsroom /wysk/conciliation_ litigation.cfm (last visited February 13, 2019).

Conversely, allowing employers to compel arbitration where the EEOC brings an enforcement action on behalf of an employee who previously agreed to arbitration would materially constrain and delay litigation for the most egregious of ADA claims. Accordingly, the Court holds that Massie's intervention does not constitute an independent action that is subject to arbitration, nor does it revoke the EEOC's exclusive jurisdiction over the ADA claim. Consequently, IDEC's motion to compel arbitration and stay litigation as to the ADA claim is denied.

Finally, the Court considers whether to compel arbitration for Massie's ADEA claim. In this case, the ADEA claim is not part of the EEOC's enforcement action, but was added as part of Massie's Motion to Intervene. Although IDEC did not oppose Massie's Motion to Intervene, this Court orders that the additional claim alleged in Massie's motion be severed from the ADA claim in this action. *See* Fed. R. Civ. P. 42(b). While Massie has an unconditional right to intervene with respect to the EEOC's ADA claim, the statute does not grant an unconditional right to assert additional claims. *See* 42 U.S.C. § 2000e–5(f)(1). More so, the EEOC did not intend to include the ADEA claim in their enforcement action. Other courts have severed additional claims where they would "unduly complicate the proceedings." *See EEOC v. Rekrem, Inc.*, 199 F.R.D. 526, 529 (S.D.N.Y. 2001) (citing *EEOC v. National Cleaning Contractors, Inc.*, No. 90 Civ. 6398, 1991 WL 161364 at *2 (S.D.N.Y. Aug. 16, 1991)). While *Rekrem* and *National Cleaning* address the addition of state claims, the underlying policy arguments are transferrable to the issues in this case. Here, allowing both claims to proceed under the EEOC's enforcement litigation would allow Massie to circumvent his contractual obligation to arbitrate employment-related claims for which he has an

independent action. On the other hand, Massie's right to recover under the ADEA claim is not diminished or limited because the EEOC filed the initial ADA complaint. While allowing the ADA and ADEA claims to proceed in litigation would promote judicial economy, it would directly conflict with the pro-arbitration policies of the FAA. Convenience alone is an insufficient reason to render an arbitration agreement inapplicable. *See E.E.O.C. v. Woodmen of World Life,* 479 F.3d 561, 567 (8th Cir. 2007). This Court orders Massie's ADEA claim to proceed separately to arbitration.

## Conclusion

Based on the foregoing discussion, IDEC's motion [21] to compel arbitration is granted in part and denied in part. The motion is denied as to the EEOC's ADA claim against IDEC Corporation and granted as to Massie's ADEA claim. Accordingly, IDEC's motion to stay litigation is denied.

IT IS SO ORDERED.

Date: 3/14/2019

Entered:_____

SHARON JOHNSON COLEMAN
United States District Judge